IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-02884-PAB-CYC

TOLL BROTHERS, INC., a Delaware corporation,
TOLL SOUTHWEST LLC, a Delaware limited liability company, and
TB PROPRIETARY CORP., a Delaware corporation,

Plaintiff,

v.

JEFFREY GU, an individual,
TOLL BROTHERS LLC, a Colorado limited liability company,
TB PROPRIETARY CORP LLC, a Colorado limited liability company,
TOLL ARCHITECTURE LLC, a Colorado limited liability company,
TOLL HOLDINGS LLC, a Colorado limited liability company,
TB PROPRIETARY CORP., a Colorado corporation,
TOLL ARCHITECTURE, INC, a Colorado corporation,
TOLL BROTHERS, INC, a Colorado corporation, and
TOLL SOUTHWEST LLC, a Wisconsin limited liability company,

Defendants,

and

JEFFREY GU, an individual,

Counterclaimant,

v.

TB PROPRIETARY CORP., a Delaware corporation,
TOLL BROTHERS, INC., a Delaware corporation, and
TOLL SOUTHWEST LLC, a Delaware limited liability company,

Counter-Defendants.

---

**ORDER**

---

This matter comes before the Court on Plaintiffs' Motion for Default Judgment against Nominal Defendants [Docket No. 179].

## I. BACKGROUND[1]

Plaintiff Toll Brothers, Inc. ("Toll Brothers") is a leading luxury home builder in the United States. Docket No. 1 at 6, ¶ 24. Toll Brothers operates in 24 states, is listed among the Fortune 500, and is publicly traded on the New York Stock Exchange. *Id.*, ¶ 25. Plaintiff TB Proprietary Corp. ("TB") is the owner of Toll Brothers' registered service marks. *Id.* at 3, ¶ 7. TB's primary function is to hold title as the registered owner of Toll Brothers' intellectual property. *Id.* Toll Brothers, through TB, registered the mark TOLL BROTHERS as a service mark with the United States Patent and Trademark Office ("USPTO") on August 18, 1987. *Id.* at 7, ¶ 26. The registration in the TOLL BROTHERS service mark was renewed on September 22, 2017. *Id.* Beginning in approximately 2020, an affiliate of Toll Brothers developed a townhome community in Wheat Ridge, Colorado. *Id.*, ¶ 27. On or about January 19, 2023, Jeffrey Gu purchased a townhome from plaintiff Toll Southwest LLC ("Toll Southwest"), an affiliate of Toll Brothers that does business in the Colorado area. *Id.* at 3, 7, ¶¶ 6, 28.

Shortly after purchasing the home, Mr. Gu submitted 35 warranty requests. *Id.* at 7, ¶ 28. Toll Southwest made repairs in response to some of the warranty requests, but determined that other warranty requests were not covered by the applicable warranties. *Id.* Toll Southwest denied Mr. Gu's complaints that it determined were not covered. *Id.* In response, Mr. Gu took a series of actions including filing prelitigation notices, filing

[1] Because of the Clerk of Court's entry of default, *see* Docket No. 123, the factual allegations in plaintiffs' complaint, Docket No. 1, are deemed admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

complaints with the Pennsylvania and Colorado Attorneys General, filing a complaint with the Florida Board of Architecture and Interior Design, and repeatedly contacting employees, contractors, and partners of plaintiffs. *Id.* On July 22, 2025, Mr. Gu formed seven entities that had similar names to the TOLL BROTHERS service mark and registered these entities with the Colorado Secretary of State. *Id.* at 8, ¶ 31. These entities include Toll Brothers LLC, TB Proprietary Corp LLC, Toll Architecture LLC, Toll Holdings LLC,[2] TB Proprietary Corp., Toll Architecture, Inc, and Toll Brothers, Inc. *Id.* Mr. Gu is the registered agent for these entities, and the entities have the same address as the property Mr. Gu purchased from Toll Southwest. *Id.*, ¶¶ 31, 34. The same day that Mr. Gu registered these entities with the Colorado Secretary of State, he also registered Toll Holdings LLC and TB Proprietary Corp. as foreign business corporations with the Pennsylvania Secretary of State. *Id.* at 8-9, ¶¶ 35-36. Pennsylvania is the principal place of business for Toll Brothers and TB. *Id.* The same day that Mr. Gu registered the Colorado entities, on July 22, 2025, Mr. Gu also formed a Wisconsin limited liability company named TOLL SOUTHWEST LLC,[3] which he registered with the Wisconsin Secretary of State.[4] *Id.* at 9, ¶ 37. Mr. Gu has also formed entities with names similar to another company, unrelated to Toll Brothers, from which Mr. Gu has bought a home. *Id.* at 10, ¶¶ 46-47. On August 8, 2025, Toll Brothers, through counsel,

---

[2] Toll Brothers has multiple subsidiaries with names that are variations of Toll Holdings. Docket No. 1 at 8, ¶ 32.

[3] Plaintiffs refer to this entity as both TOLL SOUTHWEST LLC, Docket No. 1 at 9, ¶ 37, and Toll Southwest LLC. *Id.* at 5, ¶ 17. The Court will refer to this entity as TOLL SOUTHWEST LLC in order to differentiate the entity from plaintiff Toll Southwest LLC.

[4] Mr. Gu also filed articles of incorporation with the Florida Secretary of State for two corporations named TB PROPRIETARY CORP and TOLL ARCHITECTURE, INC. Docket No. 1 at 9, ¶ 38. These entities are not at issue in this case.

contacted Mr. Gu requesting that he inform Toll Brothers of all actions he took with the entities he formed, that he dissolve the entities, and that he discontinue using names similar to Toll Brothers. *Id.* at 11, ¶ 53. Mr. Gu refused to dissolve the entities. *Id.*, ¶ 54.

On September 12, 2025, plaintiffs filed this action, bringing claims against Mr. Gu and the entities he registered in Colorado and Wisconsin. *See generally id.* These entities include Toll Brothers LLC, TB Proprietary Corp LLC, Toll Architecture LLC, Toll Holdings LLC, TB Proprietary Corp., Toll Architecture, Inc, and Toll Brothers, Inc, and TOLL SOUTHWEST LLC (collectively, the "entity defendants"). Plaintiffs bring claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, for trademark infringement, unfair competition, and false designation of origin,[5] a claim for declaratory judgment,[6] and Colorado state law claims for trademark infringement, unfair competition, and misappropriation of business value. *Id.* at 12-16, ¶¶ 59-84. Mr. Gu is proceeding pro se in this action. The entity defendants, however, have not made an appearance in this action.[7] On December 15, 2025, the Clerk of the Court entered default against the entity defendants. Docket No. 123. On January 26, 2026, plaintiffs filed a motion for default judgment as to the entity defendants. Docket No. 179.

[5] Plaintiffs bring their unfair competition claim and false designation of origin claim under the same cause of action. Docket No. 1 at 14-15, ¶¶ 71-77.

[6] This appears to be a request for a certain form of relief rather than an independent cause of action.

[7] Mr. Gu does not represent the entity defendants, nor could he, as the Local Rules for the District of Colorado do not allow entities to appear without counsel admitted to the bar of this Court. *See* D.C.COLO.LAttyR 5(b).

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the court considers that "[s]trong policies favor resolution of disputes on their merits." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* Default judgment serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard.") (internal citation

omitted). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2022 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id*. Moreover, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

To obtain a default judgment for a sum certain, the plaintiff must show the following by affidavit. First, that the party in default is (1) not a minor or an incompetent person, (2) is not in military service, and (3) has not made an appearance. D.C.COLO.LCivR 55.1(a)(1). Second, that the sum is certain or the sum can be made certain by computation. D.C.COLO.LCivR 55.1(a)(2). Additionally, the plaintiff must submit a proposed form of judgment that shows (1) the party in favor of whom judgment shall be entered, (2) the party against whom judgment shall be entered, (3) the sum

certain amount consisting of the principal amount, prejudgment interest, and the rate of post judgment interest, and (4) the sum certain of attorney fees. D.C.COLO.LCivR 55.1(b).

## III. ANALYSIS

### A. Jurisdiction

Before entering default judgment, the court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over the defendant. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

#### *1. Subject Matter Jurisdiction*

Plaintiffs assert that the Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 1367, and 1332. Docket No. 179 at 5. Pursuant to 28 U.S.C. § 1331, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to 28 U.S.C. § 1338(a), the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks." Section 1338(b) confers district courts with "original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the . . . trademark laws." 28 U.S.C. § 1338(b). Therefore, the Court has subject matter jurisdiction over plaintiffs' federal claims pursuant to §§ 1331 and 1338. Pursuant to 28 U.S.C. § 1367, the Court may exercise supplemental jurisdiction over state law claims which are incidental to federal question claims so long as they "arise from a common nucleus of

operative fact." *Otter Prods., LLC v. Stage Two Nine, LLC*, No. 18-cv-01724-CMA-NYW, 2019 WL 570642, at *3 (D. Colo. Jan. 15, 2019), *report and recommendation adopted*, 2019 WL 568477 (D. Colo. Feb. 12, 2019) (internal quotations and citation omitted). Here, all of plaintiffs' claims arise from the fact that the entity defendants have similar names to plaintiffs. Docket No. 1 at 12-16, ¶¶ 59-84. Therefore, the Court may exercise supplemental jurisdiction over plaintiffs' state law claims.[8]

Plaintiffs have not, however, established that the Court has diversity jurisdiction over this action. Pursuant to 28 U.S.C. § 1332, the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires that "each plaintiff must be diverse from each defendant." *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011). But plaintiffs have not established the citizenship of plaintiff Toll Southwest, a limited liability company. Plaintiffs allege that Toll Southwest is a Delaware limited liability company with its principal place of business in Pennsylvania. Docket No. 1 at 3, ¶ 6. However, the citizenship of a limited liability company is not determined by its state of organization or principal place of business, but by the citizenship of all of its members. *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237-38 (10th Cir. 2015) ("[I]n determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members."). Therefore, the Court is unable to determine the citizenship of Toll Southwest.

---

[8] As discussed below in more detail, the Court may decline to exercise supplemental jurisdiction if there are no remaining claims which the Court has federal question jurisdiction over. 28 U.S.C. § 1367(c)(3).

Accordingly, plaintiffs have not established that there is complete diversity between the parties and have thus not established that the Court has diversity jurisdiction over this action.

### *2. Personal Jurisdiction*

A plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). A plaintiff can satisfy its burden by making a prima facie showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further. *Id.* The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.*

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with

due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

Furthermore, proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit."). Without proper service, the court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

**a. Service of Process**

"[D]efault judgment cannot be entered against a defendant unless service of process is effected, or the defendant waives or accepts service." *Vanderwal v. Trujillo*, No. 21-cv-03163-WJM-NYW, 2022 WL 2512820, at *2 (D. Colo. June 15, 2022) (citation omitted). Here, Mr. Gu waived service on behalf of all the entity defendants. Docket No. 33 at 1. Thus, this prerequisite is satisfied because Mr. Gu, as the registered agent of the entity defendants, waived service on behalf of the entity defendants.

**b. General Jurisdiction**

General jurisdiction extends to "any and all claims" brought against a defendant, including claims that have no relation to the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation omitted). A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state. *Id*. For corporations, "the place of incorporation and principal place of business are 'paradig[m]

. . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted); *see also Ford Motor Co.*, 592 U.S. at 359. "Courts have held that *Daimler* applies with equal force to limited liability companies." *Bliss v. Change Healthcare Operations LLC*, 2021 WL 706770, at *1 (W.D. Okla. Feb. 23, 2021) (collecting cases). Here, plaintiffs allege that all of the entity defendants except for one were either incorporated or organized in Colorado and have their principal places of business at 5131 Vivian St, Wheat Ridge, Colorado 80033—the same property Mr. Gu purchased from plaintiffs. Docket No. 1 at 3-5, ¶¶ 9-15. Therefore, the Court has general jurisdiction over the Colorado entity defendants. However, the Court does not have general jurisdiction over TOLL SOUTHWEST LLC, which was organized in and has its principal place of business in Wisconsin. *Id.* at 5, ¶ 17.

**c. Specific Jurisdiction**

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017). That is, "[a] plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts." *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)). In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

The specific jurisdiction analysis is two-fold. First, a court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King*, 471 U.S. at 472, and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). "They must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (citation omitted). Second, if a defendant's actions create sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 105. The court considers several factors as part of this analysis, including: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

Plaintiffs argue that the Court has specific jurisdiction over TOLL SOUTHWEST LLC because it was formed by a Colorado resident for the purpose of causing injury to plaintiff Toll Southwest, and that its formation relates to a business transaction that occurred between Toll Southwest and Mr. Gu in Colorado. Docket No. 179 at 6. It is unclear whether this is sufficient to confer the Court with specific jurisdiction. On the one hand, plaintiffs allege that TOLL SOUTHWEST LLC was formed specifically to harm Toll Southwest, a Colorado resident. On the other hand, the act of organizing a limited liability company in Wisconsin does not indicate any connection to Colorado. While plaintiffs are unlikely to prevail on this theory, the Court need not determine whether it can exercise supplemental jurisdiction over TOLL SOUTHWEST LLC because, as explained below, the Court finds that plaintiffs are not entitled to relief on the merits of their claims.

### B. Merits

#### *1. Lanham Act Claims*

Plaintiffs bring claims under the Lanham Act for trademark infringement, unfair competition, and false designation of origin.[9] Docket No. 1 at 12-15, ¶¶ 62-77. These claims are proven by the same elements and are properly addressed together. *See Active Athletics, LLC v. Active Gymnastics Ctr., LLC*, No. 24-cv-00366-STV, 2024 WL 5187564, at *8 (D. Colo. Dec. 20, 2024); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1050 (10th Cir. 2008). Specifically, plaintiffs must show that they "ha[ve] a protectable interest in the mark, (2) that the defendant[s]

[9] Plaintiffs bring their trademark infringement claim under 15 U.S.C. § 1114 and their unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a). Docket No. 1 at 13-14, ¶¶ 68, 74-75.

ha[ve] used an identical or similar mark in commerce, . . . and (3) that the defendant[s'] use is likely to confuse consumers. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (internal quotations omitted). The Court does not need to address the first or third elements because plaintiffs have failed to allege that defendants used the TOLL BROTHERS mark or any similar mark in commerce.

Pursuant to 15 U.S.C. § 1127(1)(A)-(B), "a mark shall be deemed to be in use in commerce . . . on goods when . . . it is placed in any manner on the goods . . . and . . . the goods are sold or transported in commerce." Moreover, a mark shall be deemed to be in use in commerce "on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127(2). Plaintiffs have not alleged that the entity defendants sell any goods or render any services. In fact, plaintiffs acknowledge that the reason Mr. Gu formed the entity defendants "is not entirely clear." Docket No. 1 at 9-10, ¶ 44. Although plaintiffs assert that Mr. Gu formed the entity defendants for "improper purposes," so long as Mr. Gu did not act on his "improper purposes" through the sale of goods or rendering of services using a service mark that is confusingly similar to TOLL BROTHERS, his improper purposes does not fall under the purview of trademark infringement as defined by the Lanham Act. *See Huish Detergents, Inc. v. Orange Glo Int'l, Inc.*, 2002 WL 32157171, at *5 (D. Utah Nov. 6, 2002) ("the Lanham Act is meant to guard against consumers' confusion over the source of a product").

Plaintiffs assert that the mark was used in commerce because the entity defendants were registered with the Colorado and Wisconsin Secretaries of State and have names that are "deceptively similar" to TOLL BROTHERS. Docket No. 179 at 7.

But merely registering a company with a secretary of state is not a use in commerce as contemplated by 15 U.S.C. § 1127. Plaintiffs argue that the entity defendants were formed due to an intent to conduct business, *id.*, but it does not matter whether the entity defendants intend to use the mark in commerce. What matters is whether they have actually done so. *See Underwood v. Bank of Am. Corp.*, 2024 WL 1670592, at *2 (10th Cir. Apr. 18, 2024) ("actual use must take place in commerce, meaning that it consists of attempts to complete genuine commercial transactions, as opposed to uses merely intended to reserve a mark for later use.") (internal quotations, alteration, and citation omitted). For example, a court in this district rejected the contention that a business using a legal name constitutes trademark infringement when that mark is not otherwise used in commerce, noting that "[plaintiff] cites no authority for the proposition that a business' selection of a particular legal name that is otherwise never used in advertising or otherwise displayed to consumers can constitute trademark infringement or any other violations [of the Lanham Act] asserted herein." *Marco's Franchising LLC v. Marco's Coal Fired Pizza Inc.*, No. 17-cv-2550-MSK-NYW, 2019 WL 4645431, at *3 (D. Colo. Sept. 23, 2019) (citing *Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013)). The Court agrees and finds that plaintiffs have not pled a violation of the Lanham Act because plaintiffs fail to allege that the entity defendants used a service mark in commerce.

### 2. *State Law Claims*

Plaintiffs also bring claims for trademark infringement and unfair competition under Colorado common law, as well as a claim under Colorado law for misappropriation of business value. Docket No. 1 at 15-16, ¶¶ 78-84. The Court must

decide whether to exercise supplemental jurisdiction over these claims now that the Court has found that plaintiffs insufficiently pled their federal claims.

Whether to exercise supplemental jurisdiction over a state law claim "is in some measure discretionary." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025). Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction in four situations: (1) if the supplemental claim "raises a novel or complex issue of State law"; (2) if the supplemental claim "substantially predominates" over the claims within the court's original jurisdiction; (3) if the district court "has dismissed all claims over which it has original jurisdiction;" and (4) "in exceptional circumstances," when "there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "Where federal claims have dropped out of the picture, it is the seminal teaching to dismiss the state law claims without prejudice." *Hallco Env't Inc. v. Comanche Cnty. Bd. of Cnty. Comm'rs*, 149 F.3d 1190, 1998 WL 339460, at *7 (10th Cir. 1998) (internal quotations and citation omitted). In determining whether to continue to exercise supplemental jurisdiction, "the district court must consider the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness." *Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1141 (10th Cir. 2024) (citation and quotation omitted).

Because the Court found that plaintiffs' federal law claims are insufficient, it may in its discretion decide not to exercise supplemental jurisdiction over defendants' state law claims. "Once the Court is satisfied that a default judgment should be entered, the moving party must supply proof as to the amount of damages." *Leonard v. Fitzhugh*, No. 14-cv-2294-WJM-KLM, 2015 WL 3826712, at *1 (D. Colo. June 19, 2015) (citing

*Klapprott v. United States,* 335 U.S. 601, 611–12 (1949)). But plaintiffs' arguments regarding their entitlement to damages focus entirely on their Lanham Act claims. Docket No. 179 at 11-17. Thus, even if defendants are liable under plaintiffs' state law claims, plaintiffs have not met their burden to prove entitlement to damages. Accordingly, the Court finds that it is inappropriate to address the merits of plaintiffs' state law claims and will exercise its discretion not to do so. Therefore, the Court will deny plaintiffs' motion for default judgment.

Plaintiffs may be able to cure the deficiencies identified in this order if they can show that the entity defendants used the TOLL BROTHERS mark in commerce. Moreover, plaintiffs can potentially establish that the Court has diversity jurisdiction over this matter if they establish that there is complete diversity of citizenship between the parties. If plaintiffs establish diversity jurisdiction, the Court will have jurisdiction to address the state law claims even if plaintiffs' Lanham Act claims are insufficient. Therefore, the Court will deny the motion for default judgment without prejudice. *See Vision Chem. Sys., Inc. v. Franco*, No. 23-cv-01618-DDD-SBP, 2025 WL 1580480, at *1 (D. Colo. Mar. 17, 2025) (denying a motion for default judgment without prejudice because the deficiencies identified in the order can be corrected in a renewed motion).

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Plaintiffs' Motion for Default Judgment against Nominal Defendants [Docket No. 179] is **DENIED without prejudice**.

DATED September 3, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge